NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: September 30, 2025

S24G1331. ULTRA GROUP OF COMPANIES, INC. v. PRINCE AND PRINCE, LLC et al.

ELLINGTON, Justice.

This appeal arises from a contract dispute between appellant Ultra Group of Companies ("Ultra") and appellees Uttam Dey and Prince and Prince, LLC (collectively "Prince"). The contract between the parties concerns the placement and operation of Ultra's coin-operated amusement machines ("COAMs") on Prince's premises. We granted Ultra's petition for a writ of certiorari to address whether the Court of Appeals erred in affirming the Superior Court of Fulton County's order dismissing with prejudice Ultra's appeal to the superior court from a decision of the Georgia Lottery Corporation ("GLC") pursuant to OCGA § 50-27-102. The superior court determined that Ultra failed to timely appeal from the GLC hearing officer's "Interim Award." As explained more fully below, because

Ultra timely filed its appeal from the hearing officer's "Final Award," the superior court erred in dismissing the appeal and the Court of Appeals erred in affirming that decision.

1. *Pertinent Facts and Procedural History.*

The parties do not dispute the following pertinent facts. On July 30, 2021, a GLC hearing officer entered an order designated as an "Interim Award" in the parties' GLC arbitration proceedings held pursuant to OCGA § 50-27-102 (c).[1] The hearing officer largely ruled in Prince's favor, granting summary judgment on the substantive issues regarding the application of the contract but leaving the remaining claims for fees and costs pursuant to the contract unresolved. On September 17, 2021, the hearing officer entered a second order, titled "Final Award," which expressly adopted and incorporated the Interim Award, split the arbitration costs, and

---

[1] At the time of the hearing, § 50-27-102(c) was then OCGA § 50-27-102(d). In 2024, subsection (d) was redesignated as subsection (c) with minor, immaterial changes. See Ga. L. 2024, p. 739, 748-750, § 11. We note that the applicable rules of the GLC still refer to OCGA § 50-27-102(d) and not § 50-27-102(c).

2

awarded Ultra attorney fees.[2]  The parties received the Final Award on October 4, 2021.

Ultra sought review of the hearing officer's Final Award by filing a "Request for Reconsideration and Motion for Review" with the GLC's chief executive officer ("CEO") on October 14, 2021. Pursuant to GLC Rule 13.2.5(1)(b)(4), Ultra's motion for review was denied when the CEO did not rule on it within 30 days. On December 10, 2021, Ultra timely filed a petition for certiorari to the Superior Court of Fulton County.[3]  Prince moved to dismiss the petition,

---

[2] The award stated:

The Hearing Officer hereby adopts and incorporates herein her July 30, 2021, Interim Order on Cross-Motions for Summary Judgment (the 'Interim Award'). Except as it may be varied by this Final Order, the Interim Award is made a part of this Final Order as if fully set forth herein. . . .This Final Award resolves all issues presented for decision in this arbitration decision.

[3] See former OCGA § 5-4-3 (2023) ("When either party in any case in any inferior judicatory or before any person exercising judicial powers is dissatisfied with the decision or judgment in the case, the party may apply for and obtain a writ of certiorari by petition to the superior court for the county in which the case was tried, in which petition he shall plainly and distinctly set forth the errors complained of[.]"); former OCGA § 5-4-6(a) (2023) ("All writs of certiorari shall be applied for within 30 days after the final determination of the case in which the error is alleged to have been committed.") The General Assembly has since repealed these statutes. See Ga. L. 2022, p. 767, 768 § 1-1. In its place, the General Assembly enacted OCGA § 5-3-2, § 5-3-6(a), and § 5-3-7(b), which became effective on July 1, 2023, after Ultra filed its petition for

arguing that Ultra had failed to preserve its right to appeal because it did not file a motion with the CEO for review of the hearing officer's Interim Award (as opposed to the Final Award), within 10 days. Ultra responded, arguing that it had timely appealed from the Final Award, which was the only appealable order under GLC Rules. The superior court agreed with Prince and dismissed Ultra's petition.

Ultra appealed to the Court of Appeals, which affirmed the superior court's final order without opinion pursuant to Court of Appeals Rule 36. Ultra then moved for reconsideration, arguing that the superior court's dismissal of the entire appeal was improper because, even if Ultra's appeal of the Interim Award was untimely, Ultra timely appealed the ruling concerning costs and attorney fees in the Final Award. The Court of Appeals denied Ultra's motion for reconsideration and Ultra petitioned this Court for a writ of certiorari, which we granted.

---

writ of certiorari. Under the new statutory scheme, there is a "uniform procedure" to appeal via a "petition for review." OCGA § 5-3-2(b)(1).

In the order granting the writ of certiorari, this Court informed the parties that it was particularly concerned with the following:

> When a Georgia Lottery Corporation hearing officer appointed pursuant to OCGA § 50-27-102 (c) issues a nonfinal order, must the aggrieved party file a motion for review with the Georgia Lottery Corporation's chief executive within 10 days of receipt of that order? Would failure to timely move for review of that non-final order prejudice the aggrieved party's right to appeal a subsequent final order in the matter?

2. *Analysis.*

Because the issues decided by the superior court and Court of Appeals present questions of law concerning the meaning of GLC rules of appellate procedure, specifically Rules 13.2.4 and 13.2.5, a de novo standard of review applies. See *Adventure Motorsports Reinsurance, Ltd. v. Interstate Nat'l Dealer Servs.*, 313 Ga. 19, 25 (2021). Further,

> [a]s we have said many times before when interpreting legal text, we do not read words in isolation, but rather in context. The primary determinant of a text's meaning is its context, which includes the structure and history of the text and the broader context in which that text was enacted, including statutory and decisional law that forms the legal background of the written text. This principle, and other rules of statutory construction, apply

5

to all positive legal rules, including agency regulations.

*City of Guyton v. Barrow*, 305 Ga. 799, 805 (2019) (citations and punctuation omitted). And, finally,

> we must read the [legal] text in its most natural and reasonable way, as an ordinary speaker of the English language would. If the [legal] text is clear and unambiguous, we attribute to the [legal text] its plain meaning, and our search for [textual] meaning is at an end.

*Premier Health Care Investments, LLC v. UHS of Anchor, L.P.,* 310 Ga. 32, 39 (2020).

Ultra contends that the order it appealed – the Final Award – was the only appealable order under the GLC Rules because the Final Award was the only order that resolved all issues presented for decision in the arbitration proceedings. Because Ultra timely appealed to the GLC's CEO within 10 days of receipt of the Final Award, Ultra contends that it preserved its right to an appeal by complying with the GLC Rules. As explained below, we agree that the Final Award in this case was the only appealable final order issued by the GLC hearing officer and that Ultra timely appealed

from that order.

First, it is important to view the GLC rules in context. Under Georgia law, the GLC has "jurisdiction of all disputes" involving its COAM licensees. OCGA § 50-27-102(c)(2).[4] While this Code section sets forth the general framework for appealing GLC decisions, OCGA § 50-27-102(c)(5),[5] it also directs the GLC to adopt rules governing its dispute resolution procedure. OCGA § 50-27-102(c)(3).[6]

---

[4] OCGA § 50-27-102(c)(2) provides, in pertinent part:
> The corporation shall have jurisdiction of all disputes between and among any licensees or former licensees whose licenses were issued pursuant to this article relating in any way to any agreement involving coin operated amusement machines, distribution of funds, tortious interference with contract, other claims against a subsequent master licensee or location owner, or any other claim involving coin operated amusement machines[.]

[5] OCGA § 50-27-102(c)(5) provides:
> The decision of the hearing officer may be appealed to the chief executive officer or his or her designee. The chief executive officer shall not reverse a finding of fact of the hearing officer if any evidence supports the hearing officer's conclusion. The chief executive officer shall not reverse a conclusion of law of the hearing officer unless it was clearly erroneous, arbitrary, and capricious or exceeded the hearing officer's jurisdiction. The decision of the chief executive officer may be appealed to the Superior Court of Fulton County, which court shall not reverse the chief executive officer's findings of fact unless it is against the weight of the evidence as set forth in Code Section 5-5-21, and the chief executive officer's legal conclusions shall not be set aside unless there is an error of law.

[6] OCGA § 50-27-102(c)(3) provides, in pertinent part:

7

As is pertinent to this case, although the GLC would not be authorized under this Code section to adopt a rule that foreclosed appeals to the superior court from the CEO's final decisions, it is authorized to define what constitutes the final, appealable "decision of the chief executive officer," so long as that rule is not inconsistent with the Georgia Arbitration Code.[7] See id. Further, GLC Rule 13.2.5 (1) provides that the appellate procedures outlined in the GLC rules are the "exclusive administrative remedy for appealing decisions entered pursuant to these rules."[8] The rules also provide

---

The corporation shall also adopt rules governing the procedure, evidentiary matters, and any prehearing discovery applicable to disputes resolved pursuant to this Code section. Such rules shall be consistent with the Georgia Arbitration Code[.]

[7] Prince does not argue that construing the GLC rules to require that appeals be taken from the hearing officer's Executive Order is inconsistent with either the Georgia Arbitration Code or OCGA § 50-27-102(c)(5).

[8] We note that, although the legislature expressly provided for interlocutory review in other administrative proceedings, see OCGA § 50-13-19(a) (stating that "[an] intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy"), it did not do so for GLC proceedings under OCGA § 50-27-102(c). The Lottery is "an instrumentality of the state, and not a state agency, and a public corporation." OCGA § 50-27-4. Further, Georgia's Administrative Procedure Act does not apply to GLC COAM arbitrations. See OCGA § 50-27-9(a)(19) ("Hearings under Code Section 50-27-102 shall be held in accordance with the provisions of Part 1 of Article 1 of Chapter 9 of Title 9, the 'Georgia Arbitration Code.").

8

that "[a] party must follow the intra-agency appeal procedure as outlined in this Rule. The failure of a party to follow such appeal procedure shall constitute a waiver of its appeal rights." Rule 13.2.5(3).

Second, the GLC rules of appellate procedure do not distinguish between interim and final orders or contemplate using multiple orders to resolve a dispute following a hearing. Instead, they mandate that "[a]s soon as possible after the close of a hearing, the Hearing Officer *shall* issue an Executive Order (the 'Order') in the case and forward that Order to the GLC for service and execution." Rule 13.2.4(1) (emphasis supplied). Further, the Executive Order "*shall* contain the determination of the Hearing Officer and any penalties to be imposed as a result of the proceeding." Rule 13.2.4(2) (emphasis supplied). Once the Executive Order is issued, the aggrieved "licensee or applicant shall have ten (10) days from the date of receipt of the Hearing Officer's Order, to file with the President/CEO a written Motion for Review by electronic mail" to the GLC. Rule 13.2.5(1)(b)(1)(B). Although the

9

rules do not forbid the use of interim or other types of orders during the GLC arbitration process, the rules plainly contemplate a specific type of order – an Executive Order – to resolve all aspects of the dispute following the conclusion of the hearing. And while the rules do not expressly state that Executive Orders are "final" orders that resolve "all issues," that conclusion is necessarily implicit in the language of Rule 13.2.5(2) for the following reasons.

Under GLC appellate procedure, the "Executive Order," which is referred to in a parenthetical as "the Order," is the only order required to contain "the determination" of the hearing officer, including any penalties to be imposed, following the hearing. It is the only order that must be served on the parties and executed on the date specified in the order unless it is stayed. See Rule 13.2.4(3). Further, although the GLC rules refer to "orders" generically elsewhere, whenever an "Order" is mentioned in the text of the GLC appeals rules, the word is both singular and capitalized. Thus, such an "Order" can only reference an Executive Order. See Rule 13.2.4(1). It follows, then, that when the GLC Rules discuss the

procedures for appeals from an Order, they discuss appeals from Executive Orders.

In this case, the Interim Award did not resolve Ultra's pending contractual claims for fees and costs, which are a part of the dispute in this case. Therefore, the Interim Award did not resolve all issues pending before the hearing officer following the hearing. Given that it did not resolve those pending claims, it is not an Executive Order as defined in the GLC Rules. And, finally, because the Interim Award was not an Executive Order, it was not an appealable order. Consequently, in this case, there is only one order that suffices as an Executive Order, and that is the Final Award. Because Ultra timely appealed from the Final Award, the superior court erred in dismissing the appeal and the Court of Appeals erred in affirming the decision of the superior court.

Because the Court of Appeals' decision in this case was issued without an opinion, we do not know what legal authority it relied on in affirming the superior court's judgment. We note, however, that in *Lucky Fortune, LLC v. Ga. Lottery Corp.,* 367 Ga. App. 263, 266

11

(2023), the Court of Appeals assumed, in support of its holding dismissing an appeal from an interim order of a GLC hearing officer,[9] that "there is no provision in the GLC's rules limiting the type of order from which an appeal may be filed. See RU 13.2.5 (1) (a) (3)." However, Rule 13.2.5(1)(a)(3) provides only that a licensee may "appeal by filing a Request for Reconsideration with the [CEO] . . . no later than ten (10) days after receipt of the Order." That rule, standing alone, does not support the proposition for which it was cited. Further, the Court of Appeals did not analyze what constitutes an appealable order under the GLC's rules of appellate procedure. The Court of Appeals' assumption that "there is no provision in the GLC's rules limiting the type of order from which an appeal may be filed" is contrary to our analysis in this case. Therefore, we

---

[9] In *Lucky Fortune*, the Court of Appeals held:
Accordingly, to preserve its right to appeal, and notwithstanding any other direction by the hearing officer to the contrary, Lucky Fortune was required to file a "Request for Reconsideration with the Chief Executive Officer or his or her designee no later than ten (10) days after receipt of the [September 16] Order." RU 13.2.5 (1) (a) (3). It was not until October 25, 2021, that Lucky Fortune filed such a request with the GLC chief executive officer. It follows that the trial court correctly held that Lucky Fortune's first-step appeal to the GLC chief executive officer was untimely.

disapprove of *Lucky Fortune* to the extent it conflicts with our analysis here.

*Judgment reversed. All the Justices concur.*